# IN THE SUPREME COURT OF IOWA

No. 12–0229

Filed April 27, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**RICHARD S. KALLSEN,**

Respondent.

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed multiple ethical infractions and recommends two-year suspension of respondent's license to practice law. **LICENSE SUSPENDED**.

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Richard S. Kallsen, Sioux City, pro se.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Richard S. Kallsen arising from his representation of Elvin Farris defending a charge of operating while intoxicated, second offense. Kallsen filed a forged guilty plea with the district court resulting in Farris serving a seven-day jail sentence. The Board alleges Kallsen's conduct violated four Iowa Rules of Professional Conduct related to attorney–client authority, candor toward a tribunal, and the administration of justice. A division of the Grievance Commission of the Supreme Court of Iowa determined Kallsen violated the four rules charged in the complaint and recommended we suspend Kallsen's license for two years. On our de novo review, we find Kallsen violated all charged rules and suspend him from the practice of law for one year.

## I. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 528 (Iowa 2011) (citation and internal quotation marks omitted). "We give the commission's findings respectful consideration, but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 434 (Iowa 2012). "The [B]oard must establish attorney misconduct by a convincing preponderance of the evidence." *Dunahoo*, 799 N.W.2d at 528. If we find the Board established attorney misconduct, we can impose a sanction more or less severe than the commission's recommended sanction. *Boles*, 808 N.W.2d at 434.

## II. Procedural History and Findings of Fact.

Kallsen informally defended himself by sending the Board a letter and the commission an email rather than filing responsive pleadings and following the formal adjudicatory procedures set forth in our court rules.

His letter conceded that, "[e]ssentially, the complaints are factually true, but for a few minor omissions." His point of disagreement is hardly minor, however—Kallsen denies the Board's allegations that he directed Farris's fiancée, Jamie Jacobson, to forge the plea papers. The complaint alleges:

> 13. Ms. Jacobson called [Kallsen], who told Ms. Jacobson to come to his office and sign the papers for Mr. Farris.
>
> 14. Ms. Jacobson went to [Kallsen's] office and signed Elvin Farris' name three times in the presence of [Kallsen].

Kallsen filed no answer to the complaint. The Board's request for admissions similarly alleges: "Request No. 5. Jamie Jacobson signed the name of Elvin Farris on pages 4 and 5 of exhibit 1 at the direction of respondent, Richard Kallsen." Kallsen filed no response to the request for admissions and no resistance to the Board's motion to deem the requests admitted.

> In his October 24 letter to the Board, Kallsen stated:
>
> I tendered what I thought was a plea agreement signed by [Farris]. There is disagreement as to whether Mr. Farris signed the document or not. In looking at the plea document, it does appear that the signatures are not similar, and as such, that Mr. Farris did not sign the plea and waiver. I do not disagree with that, but I also testified in my [postconviction relief proceeding] deposition, and have maintained throughout, that I did not sign Mr. Farris' name, nor direct anyone else to sign the documents for him. I believed in good faith that Mr. Farris had signed the documents . . . .

In his email to the commission on the eve of his disciplinary proceeding, Kallsen again denied he directed the forgery:

> Regarding the particulars of the complaint, I freely admit all of Count 1, except for paragraphs 13 and 14. I do not recall telling Ms. Jacobson to sign paperwork in my office. I did, however, notarize the papers and that was a mistake. I was flustered and in a hurry and just signed the notary, even though notary is not necessary and I usually do not notarize plea documents.

He failed to attend the commission's evidentiary hearing. We must consider what weight, if any, we should give to Kallsen's informal denials.

**A. The Appropriate Evidentiary Record.** The commission properly granted the Board's motion to admit allegations in the Board's complaint as true, but nevertheless received Kallsen's letter and email into evidence. We find it inappropriate to give any probative value to Kallsen's letter or email.

The Board served Kallsen with its complaint, request for production, and request for admissions on October 13, 2011. The notice of complaint informed Kallsen he had twenty days to file a written answer. Iowa Court Rule 36.7 states:

> For good cause shown upon written application, the grievance commission may grant an extension of time for filing an answer. If the respondent fails or refuses to file such answer within the time specified, the allegations of the complaint shall be considered admitted . . . .

Kallsen did not file a responsive pleading with the grievance commission's clerk's office as required by rule 36.11 nor did he file a written application for extension as permitted by rule 36.7. Our court rule makes unmistakably clear that "the allegations of the complaint shall be considered admitted" in this situation. We have enforced this rule on multiple occasions. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, ___ N.W.2d ___, ___ (Iowa 2012) (" '[T]he allegations of an ethics complaint are deemed admitted if the respondent fails to answer within the specified time.' " (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506 (Iowa 2011))); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669 (Iowa 2008) ("The allegations of the complaint and the commission's request for information were deemed admitted based on Adams' failure to respond.").

Further, on November 15, the Board filed a motion that the complaint's allegations be deemed admitted because Kallsen had failed to file an answer. On December 27, the Board moved to admit its requests for admissions pursuant to Iowa Court Rule 35.6 and Iowa Rule of Civil Procedure 1.510(3). Kallsen did not file a resistance to either motion as required by Iowa Court Rule 36.11.

Kallsen attempted to skirt the formal adversary process by defending himself through two self-termed "informal note[s]." He presented no sworn evidence on his behalf, nor was he subject to cross-examination. *See* Iowa Ct. R. 36.14(3) (stating the respondent shall "present evidence in accordance with the Iowa Rules of Civil Procedure and the Iowa Rules of Evidence"). "We have long held that an attorney has an obligation to cooperate with disciplinary authorities and that failure to respond to an investigation committee's request constitutes a separate act of misconduct subjecting the attorney to discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009). We similarly expect attorneys to defend themselves within the formal adjudicatory procedures provided in our court rules. Accordingly, we do not give any weight to Kallsen's letter or email denying certain Board allegations.

We deem the allegations in the Board's complaint admitted. *Hearity*, ___ N.W.2d at ___. Additionally, the commission received into evidence thirteen exhibits and heard testimony from Farris. Based upon this record, we find the following facts.

**B. Findings of Fact.** Kallsen graduated from law school in 1995 and was admitted to practice in Iowa in January 1996. He maintained his law practice in Woodbury County. Burned out with the practice of law in 2000, after only four years, he began to wind down his law

practice to pursue a teaching career. Kallsen neglected two clients during his career transition, which resulted in this court suspending his license for three months in 2003. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 162 (Iowa 2003). In April 2008, Kallsen applied for reinstatement, which we granted.

In July 2009, Kallsen agreed to represent Farris on his OWI, second offense charge. Farris paid Kallsen $1200 to assist him in the Department of Transportation administrative hearing and the criminal proceeding. The two agreed to a strategy of delaying the proceedings to allow Farris to continue uninterrupted employment as an over-the-road construction worker. Kallsen successfully delayed the proceedings for many months. Eventually Farris had to face the music. On February 16, 2010, the district court ordered "[p]lea taking and sentencing . . . set for March 23, 2010."

After viewing the police video of Farris's arrest and the other evidence, Kallsen believed a plea deal was in Farris's best interest. Farris, however, was adamant he was not drunk and would not plead without first seeing the video. Kallsen had negotiated three different plea offers with prosecuting authorities and sent each to Farris's Sioux City home, which he shared with Jacobson. Farris received some of the paperwork; however, he had not signed or returned the paperwork, in part, because Kallsen still had not shared the police video with him.

On the morning of March 23, Kallsen attempted to call Farris several times to obtain his plea documents. Farris refused to answer his phone. Kallsen then contacted Jacobson at work explaining to her that he could not reach Farris, and he needed Farris's guilty plea immediately or Farris would go to jail. Jacobson failed to reach Farris before she left work to go home to search for his plea documents. Unable to find them,

she called Kallsen who told her to come to his office and sign another set of the plea documents. Jacobson went to Kallsen's office and signed Farris's name three times in Kallsen's presence. Kallsen then notarized the signature on the plea affidavit before filing the documents with the Woodbury County Clerk of Court that same day. The plea was for OWI, first offense. The district court sentenced Farris to 365 days in jail, with 358 days suspended. The March 23 sentencing order provided mittimus shall issue on April 5—providing nearly two weeks before Farris was to report to jail.

Farris answered Jacobson's phone call the afternoon of March 23 and learned Kallsen had entered a plea on his behalf. Farris testified he did not know what to do, but Jacobson told him he had to turn himself in to the police. Farris did not contact any other lawyer or speak to Kallsen during the thirteen days before he reported to jail. Someone who never expected to plead guilty and serve jail time presumably would have protested during this interim. Farris simply served the seven days in jail, from April 5 to April 11. According to Farris's unchallenged testimony, after he was released from jail, Kallsen admitted he had acted inappropriately by entering the guilty plea without Farris's authorization and said he would so inform the court. Kallsen offered no admissible evidence to cast doubt on Farris's version of events. Kallsen also refunded Farris's $1200 fee. On April 21, Farris filed a postconviction relief action on his own behalf. After taking depositions, the State filed a motion to set aside Farris's guilty plea and conviction. The district court granted the motion. A trial date was reset. The arresting officer was ill at time of trial, and the State dismissed the OWI charge against Farris with prejudice.

On March 1, 2011, Kallsen placed his law license on inactive status. We retain authority to take disciplinary action against an attorney, even though the attorney is not actively engaged in the practice of law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010).

### III. Ethical Violations.

The Board alleged Kallsen violated rules 32:1.2(a), 32:3.3(a)(1), 32:8.4(c), and 32:8.4(d). The commission found Kallsen violated each of these rules. We agree.

Rule 32:1.2(a) states, "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . . ." Farris communicated to Kallsen that he did not want to plead guilty to the OWI charge. Farris was adamant he was not drunk. Kallsen disregarded Farris's instructions and filed forged plea documents with the district court. Kallsen's conduct was a flagrant violation of his professional duty to abide by his client's plea decision. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, ___ N.W.2d ___, ___ (Iowa 2012) (lawyer violated rule 32:1.2(a) by altering plea of not guilty form to effect an unauthorized waiver of right to speedy trial).

Rule 32:3.3(a)(1) prohibits a lawyer from "knowingly" making "a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact . . . previously made." "Knowingly" is defined as "actual knowledge of the fact in question" and can "be inferred from circumstances." Iowa R. Prof'l Conduct 32:1.0(f). Kallsen directed the forgery of his client's plea papers and then improperly notarized the signature. He represented to the court that Farris signed the plea papers in his presence with actual knowledge this was untrue. We find Kallsen

knowingly made a false statement of fact to the district court in violation of rule 32:3.3(a)(1).

Rule 32:8.4(c) states it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." We have concluded an attorney does not violate this general prohibition against dishonesty when the attorney's same conduct violates a specific rule of misconduct. *See, e.g., Hearity,* ___ N.W.2d at ___; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). Here, we found Kallsen made a knowing misstatement of material fact to the district court in violation of rule 32:3.3(a)(1). His dishonesty, however, goes beyond this specific rule violation. Filing the plea was merely the last step in a dishonest scheme to ensure Farris pled guilty. He called Jacobson and told her Farris would go to jail if he did not file the guilty plea papers. He directed her to come to his office and forge Farris's signature. Then he improperly notarized the plea papers. We find this conduct violates rule 32:8.4(c). *See Schall,* ___ N.W.2d at ___ (false representation as notary violates rule 32:8.4(c)).

Rule 32:8.4(d) states it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Conduct prejudices the administration of justice when it impedes " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Templeton*, 784 N.W.2d at 768 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe,* 706 N.W.2d 360, 373 (Iowa 2005)). Kallsen's conduct clearly impeded the efficient operation of the courts. Farris served seven days in jail despite not making a knowing and intelligent plea. The plea was set aside after a postconviction relief proceeding, which wasted judicial resources. Kallsen's actions required

the county attorney to reprosecute Farris, again wasting judicial resources. We find Kallsen's conduct violated rule 32:8.4(d). *See Schall*, ___ N.W.2d at ___ (rule 32:8.4(d) violated when lawyer's false statements cause unnecessary motions and court hearings).

## IV. Sanction.

We craft appropriate sanctions based upon each case's unique circumstances, although prior cases are instructive. *Boles*, 808 N.W.2d at 441. In determining a sanction

> we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (citation and internal quotation marks omitted).

The commission recommended Kallsen receive a two-year suspension. The commission deemed Kallsen's conduct to be "active deceit" and found Kallsen's prior suspension, the short interval between his license reinstatement and this incident, and his failure to cooperate with the Board to be aggravating factors. The commission found Kallsen's current inactive status and fee refund to be mitigating factors.

Kallsen's misrepresentation that his client signed the plea agreement is a "grave and serious breach of professional ethics." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007) (citation and internal quotation marks omitted) (forging executor's name on probate report is "grave and serious"). "The integrity of our legal system depends upon the unquestioned honesty of attorneys dealing with judges." *Comm. on Prof'l Ethics & Conduct v. Seff*, 457 N.W.2d 924, 927 (Iowa 1990). We reiterate that

> "[f]undamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth."

*Rickabaugh*, 728 N.W.2d at 382 (quoting *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990)).

Attorneys who actively disregard this fundamental baseline are subject to substantial sanctions ranging from permanent disbarment to six-month license suspensions. We permanently disbarred an attorney for multiple misrepresentations, including forging the executor's name on a probate report submitted to the court, after he had previously been suspended for forging a judge's signature to persuade a client he had filed a lawsuit. *Id.* at 378, 382. We suspended an attorney for two years for forging a testator's signature, procuring two persons to sign as witnesses, notarizing the subscribing witnesses' signatures, and admitting the will into probate. *Seff*, 457 N.W.2d at 926–27. We suspended an attorney one year when he notarized signatures that were not subscribed in his presence and neglected his client's probate matters. *Comm. on Prof'l Ethics & Conduct v. Hutcheson*, 504 N.W.2d 899–900 (Iowa 1993). We suspended an attorney for six months for blindly complying with his client's request to backdate several records and then falsely notarizing the documents. *Bauerle*, 460 N.W.2d at 453–54. We suspended an attorney for six months for altering and falsely notarizing a not guilty plea to effect an unauthorized waiver of speedy trial rights, among other violations. *Schall*, ___ N.W.2d at ___.

The commission identified the proper aggravating and mitigating factors. Kallsen was disciplined in 2003 for neglect, and his license was reinstated only one year prior to this incident. *Boles*, 808 N.W.2d at 442

("A pattern of misconduct is an aggravating factor."). His failure to cooperate with the formal disciplinary process is an aggravating factor. *Hearity*, ___ N.W.2d at ___ ("[F]ailure to cooperate is a significant aggravating factor."). His fee refund is a mitigating factor. *See Boles*, 808 N.W.2d at 442 (refund is mitigating factor in determining sanction for unethical accounting and billing practice). Our cases also hold Kallsen's voluntary decision to cease the practice of law is a mitigating factor. *Dunahoo*, 799 N.W.2d at 535. However, we give this factor less weight here because Kallsen voluntarily ceased practice for five years after his 2003 suspension only to later seek reinstatement and again violate our ethical rules.

The attorney–client relationship requires lawyers to honor and zealously advocate their clients' decisions concerning fundamental case decisions. Attorney honesty is paramount to the proper functioning of our adversary system. Kallsen's flagrant disregard of his client's plea decision and his active deceit to the district court undermined two of the most fundamental pillars of our adversary system. After careful consideration of the record, precedent, aggravating and mitigating factors, and the two-year suspension recommended by the Board and commission, we conclude a one-year suspension is appropriate.

## V. Conclusion.

We suspend Kallsen's license to practice law in this state with no possibility of reinstatement for one year from the date of this opinion. The suspension applies to all facets of the practice of law, as provided by Iowa Court Rule 35.12(3), and requires notification to clients, as provided by Iowa Court Rule 35.22. Upon any application for reinstatement, Kallsen must establish that he has not practiced law during the suspension period and that he has complied with the requirements of

Iowa Court Rules 35.13 and 35.22. The costs of this proceeding are assessed against Kallsen pursuant to rule 35.26(1).

**LICENSE SUSPENDED.**