COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

**George G. WEST, Appellant.**

No. 85–1804.

Supreme Court of Iowa.

May 21, 1986.

Rehearing Denied June 18, 1986.

William L. Kutmus of Kutmus & Pennington, P.C., Des Moines, for appellant.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

This disciplinary proceeding arises from attorney George West's involvement in the

acquisition, resolution of proprietary rights, and sale of real estate housing an office building (property). In reviewing West's actions concerning this property, the Grievance Commission found he committed ethical violations and recommended he be disciplined. Attorney West appealed the decision of the commission. We agree with the commission's findings of misconduct and its recommendation that appellant's license to practice law be suspended for one year.

Although appellant has been in the general practice of law for thirty years, he has been heavily involved in real estate matters. He has been a real estate broker since 1956 and conducts ten to fifteen real estate seminars each year. Appellant has been personally involved in substantial real estate holdings and has served as a real estate advisor.

In 1969 appellant entered into a joint venture with an accountant, whom we shall refer to as his "associate." This venture was intended for the acquisition of real estate. In 1970 the associate signed an offer to purchase the property for $65,000 and tendered a $100 earnest money payment. Later, appellant advanced $6,400 additional earnest money and both signed a note that was used to pay part of the remaining balance. Title was conveyed to appellant and his associate as tenants in common. The financial instruments executed for the purchase of the property indicated that appellant and his associate each owned 50 percent of the property. However, partnership tax returns for the property indicated the associate's interest to be proportional to his initial investment of $100.

Thereafter, appellant became aware that his associate was having financial problems. The associate refused appellant's request for contributions to operating and remodeling expenses and further capital contributions. The associate did, however, assist appellant in obtaining a $315,000 loan to remodel the office building on the property. Both parties signed the 1972 note and mortgage.

Later, appellant was unable to meet the expenses of operating the building and contacted his brother, a physician in California, about becoming an investor in the property. Initially, a loan was made to appellant and his associate by Westco Enterprises, Inc. (Westco), a family corporation in which appellant and his brother are shareholders. In December 1972, when Dr. West was looking for a tax shelter, he personally contributed $26,000 in cash and a $26,000 promissory note. Appellant and his wife deeded the property to appellant and Dr. West as tenants in common without the involvement or consent of the associate. Dr. West relied upon appellant in entering into this transaction and had no knowledge of the associate's interest in the property.

In 1973 Westco filed an action against appellant and his associate for money due under the promissory note and obtained a judgment in the amount of $24,695. Appellant paid the judgment and obtained a right of action against his associate. In December 1973 a lease of part of the building to the city was subsequently assigned to the mortgagee in an effort to avoid the associate's judgment creditors.

Appellant and his associate did not have a written agreement concerning ownership of the property from the time of its purchase in 1970 forward. In 1973 appellant brought a declaratory judgment action against the associate to determine their respective interests in the property; however, the suit was ultimately dismissed under Iowa Rule of Civil Procedure 215.1. In December 1982 appellant retained an attorney to assist him in obtaining a release of the associate's interest in the property. The associate had a long list of judgment creditors and was known to be judgment proof. In January 1983, under authority of appellant, his attorney wrote to the associate's attorney and proposed that the associate allow a default judgment to be entered against him. The judgment would indicate that the associate only owned a minor interest in the property. In return, appellant would exchange a satisfaction and release of two joint judgments that appellant had

paid and several rights of actions appellant had against the associate. The judgments had a total face value of over $132,000.

In March 1983 Westco commenced a quiet title action with appellant's attorney acting as attorney for Westco. The associate consented to a default judgment entered against him in which there was a finding that he had an interest in the property of no more than $350. Westco then levied on the associate's interest in the property and purchased it at a sheriff's sale on August 26, 1983. Later, some of the creditors learned of the transaction and commenced a civil suit against appellant which was later settled.

Between the time appellant retained an attorney to obtain a release of the associate's interest and the time of the sheriff's sale, the value of the property fluctuated dramatically. From January to March 1983 the city vacated two floors of the building, leaving two-thirds of the property unoccupied. Appellant negotiated with the mortgagee to avoid a foreclosure. On March 22, 1983, appellant learned from a newspaper story that a private company was initiating a redevelopment project which would involve acquisition of the property. This acquisition was commenced at a later time through condemnation proceedings brought by the city. Apparently, appellant and Dr. West enjoyed a substantial profit from the condemnation of the property after obtaining tax write-offs on depreciation of the property for several years.

Appellant's principal ethical violations arise from a series of events that preceded the city obtaining title to the property in which appellant attempted to place title to the property solely in his name. We agree with the Grievance Commission's findings that appellant acted unethically by his actions in the following activities:

1. On June 16, 1983, appellant falsely represented by letter to the City of Des Moines that he was the sole owner of the property.

2. On January 3, 1984, appellant signed the names of his brother and his brother's wife to a warranty deed conveying the property to himself and caused his office secretary to notarize the purported signatures. The deed was recorded in the Polk County recorder's office on January 20, 1984.

3. On February 4, 1984, appellant prepared a resolution of the board of directors of Westco and signed his brother's name to the resolution. This resolution authorized appellant to convey the corporation's interest in the property to himself. The deed was executed and filed for record along with the corporation's resolution on February 16, 1984.

4. In April 1984 an assistant city attorney learned of Dr. West's interest in the property during a title search. She advised appellant that the city would need a power of attorney document to demonstrate that appellant could act for his brother in the transaction. Appellant informed the assistant city attorney that Dr. West and his wife were to be in Des Moines the following weekend and an affidavit would then be obtained. Dr. West and his wife have not been in Des Moines since 1960 and it is apparent appellant lied to the assistant city attorney.

5. On April 23, 1984, appellant signed the names of his brother and his brother's wife to an affidavit stating that appellant had authority to act as their attorney in fact and had those signatures notarized. The affidavit and acknowledgement did not show that the document had not been executed by appellant's brother and sister-in-law; rather, it indicated that they had signed the affidavit in Des Moines. Appellant presented this affidavit to the city.

6. On May 15, 1984, appellant signed his wife's name to an option agreement on the property and had her signature notarized by his office secretary.

7. In the latter part of May 1984 the city's legal staff members became suspicious about appellant's wife's signature on the option agreement. A meeting was set up with the wife's attorney who provided copies of her signatures for use in a hand-

writing analysis. The analysis showed that all the signatures had been executed by the same person. The city decided that because of the title problems it discovered, the property would have to be obtained by condemnation proceedings and informed appellant that it needed to notify his associate's creditors. Appellant insisted that he was the sole owner of the property.

In response to these numbered activities, appellant claims he had authority to sign the names of his brother, his brother's spouse, and his wife to the instruments. He points to the testimony of his secretary and the deposition taken from his brother to support his assertion. The commission found to the contrary.

A convincing preponderance of the evidence supports the commission's findings. *See Committee on Professional Ethics and Conduct v. Kelly,* 357 N.W.2d 315, 316 (Iowa 1984). The assistant city attorney telephoned Dr. West in California to obtain his address in preparation for the condemnation proceedings. At that time the attorney learned that Dr. West and his wife had not been in Des Moines to sign the affidavit authorizing appellant to act as their attorney in fact. This telephone conversation was followed by a telegram from Dr. West to the assistant city attorney which stated: "To confirm our conversation of today, my wife, Milda C. West, and I did not deed our interest in the ... property to George G. West or anyone. Westco ... of which I own 60 percent, has substantial interest in this building." Following this telephone conversation, Dr. West obtained legal counsel in regard to this matter. We note that Dr. West later had a change of heart at his deposition. Appellant and Dr. West are brothers and enjoy a close family relationship; they spent Christmas together in 1984. Dr. West's deposition in this disciplinary action was taken August 21, 1985, after the condemnation proceedings had yielded a profitable sale of the property and after Dr. West was aware of this proceeding against his brother. The commission did not find, and we do not now find, that appellant defrauded or attempted to defraud his brother. Nevertheless, the manner in which appellant handled these title matters is of serious concern.

It is unethical for a lawyer to engage in conduct involving dishonesty or misrepresentation. DR 1–102(A)(4). As set out in our numbered paragraphs 1 and 7, appellant was dishonest and made false representation concerning his ownership interest in the property. Appellant also lied to the assistant city attorney about his brother and sister-in-law traveling to Des Moines, as noted by paragraph 4. We also believe his signing the names of other people to instruments relating to the title of the property, as indicated in paragraphs 2, 3, 5 and 6, were acts of dishonesty. Those instruments were all delivered by appellant, an experienced real estate lawyer, purporting to be executed by the persons whose names were shown on the instruments. They were not executed in the manner used by an attorney in fact.

It is unethical for a lawyer to engage in illegal conduct involving moral turpitude. DR 1–102(A)(3). Likewise, it is unethical for a lawyer to engage in conduct that adversely reflects on his or her fitness to practice law. DR 1–102(A)(6). Appellant violated both of these standards each time he caused his secretary to notarize the signatures of parties to instruments when the parties did not appear before her. It is a misdemeanor for a notary public to append the notary's official signature to documents when the parties have not appeared before the notary. Iowa Code § 77.11. In his actions, as set out in paragraphs 2, 5, and 6, appellant aided and abetted his secretary in the commission of this crime.

Appellant also participated in what could amount to the commission of a serious misdemeanor by the manner in which he executed his relatives' warranty deed to convey the property to himself, as set out in paragraph 2. Appellant claimed to be the attorney in fact for his brother and his brother's wife. When a deed is executed by an attorney in fact, the official taking the acknowledgement must endorse upon the deed a certificate that the person mak-

ing the acknowledgement was known to the official to be the identical person whose name is subscribed to the instrument as attorney for the grantor and that such person acknowledged the instrument to be the act and deed of the grantor. Iowa Code § 558.37. Rather than follow the statutory procedure, appellant merely signed his relatives' names to the deed and had his secretary falsely acknowledge the conveyance. Any notary who knowingly misstates a material fact in a certificate of acknowledgment on a conveyance shall be guilty of a serious misdemeanor. Iowa Code § 558.40. *See Quaas v. Quaas,* 250 Iowa 24, 33, 92 N.W.2d 427, 432 (1958); *Hutchins v. Jones Piano Co.,* 209 Iowa 394, 397, 228 N.W. 281, 282 (1929). Appellant could be deemed an accessory to a violation of section 558.40 by participating with his secretary in the false acknowledgement.

The commission further found that appellant acted unethically when he represented his brother and his brother's wife without making full disclosure of his conflict of interest and obtained their consent when he knew that he had a conflict. While we believe it is clear appellant was acting as his brother's attorney, it is unclear from the record whether appellant fully disclosed his conflict of interest. Further, it is not clear that appellant was acting adversely to Dr. West until his scheme was uncovered by the city's legal staff. If there was a scheme to defraud, it was not sufficiently proved at the hearing. Consequently, we do not believe an ethical violation has been shown in this circumstance.

Additionally, the Committee on Professional Ethics and Conduct desires that we also find appellant guilty of ethical violations by his course of conduct in clearing the title of the associate's interest. The committee points to appellant's actions in avoiding the associate's creditors and enhancing his own position with respect to the property. The record is clear that the associate placed appellant in a precarious financial position because of the associate's problems with his creditors. Those creditors were in competition with the appel-

lant's actions for whatever funds might become available to the associate to pay judgments. While we certainly do not approve of appellant's actions, we do not believe a convincing preponderance of the evidence shows appellant committed any ethical violations, other than the ones previously cited, in avoiding the associate's creditors.

Even though we have rejected one of the grounds relied upon by the commission for its recommendation of license suspension, we believe the recommendation is appropriate. Appellant flagrantly participated in dishonest and illegal acts. Although it has not been shown by a convincing preponderance of the evidence that appellant did this for his own gain or that anyone was injured, we cannot overlook the numerous ethical violations he committed. We agree that appellant's license to practice law shall be suspended indefinitely with no possibility of reinstatement for one year from the date of the filing of this opinion.

LICENSE SUSPENDED.