COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

**Robert M. SEFF, Respondent.**

No. 90–0539.

Supreme Court of Iowa.

July 18, 1990.

Charles L. Harrington, Des Moines, for complainant.

Lee H. Gaudineer, Des Moines, for respondent.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

This lawyer disciplinary matter is before us for de novo review and final disposition. Iowa Sup.Ct.R. 118.10. The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged Robert M. Seff with several ethical violations. The Grievance Commission (commission) conducted a hearing on the charge. Following this hearing the commission filed their report including findings, conclusions and recommendations. The commission concluded that Seff had violated the provisions of the Iowa Code of Professional Responsibility, and recommended that his license to practice be suspended for nine months. Seff did not appeal.

When no appeal is taken, we review de novo the record made before the commission, determine the matter, and take appropriate action. Iowa Sup.Ct.R. 118.10. We are not bound by the commission's findings or recommendations, but we give respectful consideration to them. The burden is on the committee to prove the violations as charged by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Clauss*, 445 N.W.2d 758, 760 (Iowa 1989).

I. Robert M. Seff was admitted to the Iowa Bar in 1971. He maintained an office practice with his father Albert Seff. His father was not actively practicing law but was active in the real estate business. Robert devoted most of his time to the real estate business; he limited his legal practice to real estate work, contracts, abstract examinations, and some probate work. Robert and Albert employed one secretary, Darlene Dose, who was primarily the bookkeeper but did some typing.

Albert choked on a piece of food on October 17, 1984. He was immediately taken to the hospital where he remained until his death on October 29, 1984. While in the hospital he was unable to talk or write, but nurses could communicate with him by asking him to blink his eyes.

On December 5, 1984, Albert's will was filed by Robert with the clerk of court and the will was admitted to probate. Robert and his sister, Nancy Giles, were appointed executors of the estate and Robert was designated as the estate's attorney. The bulk of the estate's property passed under the terms of the will to the surviving spouse, Marguerite Seff.

At the time of Albert's death he was eighty-five years old and his spouse was seventy-four. The Seff estate was closed in September of 1987. The federal estate tax return showed a gross estate of $2,264,684; but, because of the marital deduction, no federal estate tax was paid.

After the estate was closed, Robert discovered his secretary Dose had embezzled sizable amounts of money. He confronted her with this information on December 24, 1987, and her employment was terminated. A short time later, Dose mailed to the Iowa State Bar Association pieces of a torn-up will with her version of the execution of the Albert Seff will. This prompted investigation by the committee and resulted in the serving of a notice of complaint.

At the hearing before the commission, Robert testified his father had signed and executed a will and codicil in 1979. This 1979 will, a two trust marital deduction will with the bank and Robert as trustees, was the last will signed by his father. The signature on the will that was admitted to probate dated August 31, 1984, was Robert's.

Robert testified he and his father had retrieved the 1979 will from the bank in January of 1984. He secured a work sheet from a CPA in order to draft his father's new will. His father wanted to change the will to provide more funds for his wife. Robert prepared a draft of the new will that was then typed and delivered to his father. His father then carried it around for three or four months.

After his father was admitted to the hospital following the choking incident,

Robert communicated with his father about the will. He asked if his father wanted him to execute the will; he told his father that if so, he should acknowledge by squeezing his hand. His father squeezed his wrist and Robert assured his father that he would take care of it. He later copied Albert Seff's name on the unsigned will and secured the signature of his secretary Dose as a witness. She had her daughter sign as the second witness. The will was dated September 21, 1984.

Robert then showed the signed will to his mother. She insisted the will be retyped to show its execution on August 31, 1984, rather than September 21, 1984. She told Robert his father had taken the unsigned will to his office on the thirty-first of August to get it properly signed. However, because Albert could not locate any witness at that time, the will was not signed.

After talking with his mother, Robert took the will back to his office and had his secretary retype the will showing the date as August 31, 1984. He again signed his father's name on the will and secured the signature of Dose and her daughter as witnesses. It was this will that was admitted to probate.

II. The commission found, and we agree, that the 1984 will was not executed as required by Iowa Code section 633.279. It was not a valid will. Robert did not sign his father's name in his father's presence. The execution of the will was not done in the presence of the witnesses. The witnesses did not sign in the presence of each other. Neither witnesses signed at the request of the testator Albert Seff.

Robert signed his father's name by tracing his signature. He prepared and filed the petition for probate of the will. The petition falsely alleged to the court that the decedent made and executed an instrument designated as his Last Will and Testament, dated August 31, 1984. In order to probate the will, Robert procured and notarized Darlene Dose's testimony as subscribing witness in which she falsely states the circumstances of the execution of the will.

Although Robert knew the statements contained in the petition for probate of the will were false, he presented them to the court and acquired a court order admitting the will to probate. Robert never disclosed to the court the false statements in the probate filings and other probate records. Nor did Robert disclose to his sister and coexecutor during the administration of the estate that her father had not signed the will being probated or the falsity of other statements made in the probate proceedings. Robert, as coexecutor and as attorney for the estate, failed timely and adequately to advise the Internal Revenue Service of the circumstances of the execution of Albert's will.

III. The commission concluded Robert had violated the following provisions of the Iowa Code of Professional Responsibility for Lawyers: EC 1–5 (a lawyer should maintain a high standard of professional conduct); DR 1–102(A)(1), (3), (4), (5), and (6) (a lawyer shall not violate a disciplinary rule; engage in illegal conduct involving moral turpitude; engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; engage in conduct that is prejudicial to the administration of justice; engage in any other conduct that adversely reflects on fitness to practice law); DR 7–102(A)(3), (4), (5), (6), and (8) (a lawyer shall not conceal or knowingly fail to disclose that which he is required by law to reveal; knowingly use perjured testimony or false evidence; knowingly make a false statement of law or fact; participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false; knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule); EC 8–5 (fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a tribunal is inconsistent with fair administration of justice); and EC 9–6 (every lawyer owes a solemn duty to uphold the integrity and honor of the profession).

The commission found Robert had committed numerous ethical violations although it assigned no credibility to the testimony of secretary Dose. Nor did the commission find a convincing preponderance of the evidence to prove the allegation

that Robert's purpose in executing and probating the false substitute will was to avoid payment of substantial federal estate taxes by his father's estate.

We agree the testimony of Dose lacks credibility. There was credible evidence the Albert Seff estate would have been required to pay over $227,000 of federal estate tax if the 1979 will had been probated. However, Albert and Robert were advised that when considering Robert's mother's assets there would be more tax saving for both estates under the 1979 will than under the proposed 1984 will. Albert's express desire was to provide additional funds for his wife who had major cancer surgery in 1984. Although Robert may not have signed the will with the intent to defraud the government, his professed purpose does not excuse his deceptive and illegal conduct. We find his conduct in concealing the true circumstances of the will's execution and in proceeding with probate of the will was conduct prejudicial to the administration of justice and adversely reflects on his fitness to practice law. The integrity of our legal system depends upon the unquestioned honesty of attorneys dealing with judges. Robert breached that trust. *See Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 856, 861 (Iowa 1987). Robert knowingly misstated material facts in the probate of his father's estate. He involved his sister in the probate proceeding based upon an invalid will without disclosing the true facts to her. He got his secretary and her daughter to assist him in his deceitful conduct. He knowingly notarized the false subscribing witness testimony of his secretary in violation of the law. *See Committee on Professional Ethics & Conduct v. West,* 387 N.W.2d 338, 342 (Iowa 1986).

IV. We hold that Robert M. Seff's license to practice law should be suspended indefinitely with no possibility of reinstatement for two years. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, Seff shall have the burden to prove that he has not practiced law during the period of suspension and that he has met the requirements of Iowa Supreme Court Rule 118.13 and 118.18. It is further ordered that the costs of this action be assessed against Seff in accordance with Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.