# IN THE SUPREME COURT OF IOWA

No. 12–1529

Filed January 11, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

   Complainant,

vs.

**ERIC JONATHON PALMER,**

   Respondent.

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

In attorney disciplinary action, grievance commission recommends thirty-day suspension. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Eric J. Palmer, Oskaloosa, pro se.

**HECHT, Justice.**

In this attorney disciplinary action, the Iowa Supreme Court Attorney Disciplinary Board alleges an attorney forged the signature of his client on documents pertaining to a conservatorship and filed them with the court. Upon our de novo review of the record, we find the Board proved the attorney violated provisions of the Iowa Rules of Professional Conduct by a convincing preponderance of the evidence. We conclude a period of suspension is the appropriate sanction in this case.

## I. Background Facts and Proceedings.

Upon our de novo review of the record, we find the following facts. Eric J. Palmer was admitted to the practice of law in 1986. He served as a part-time judicial magistrate from 1986 to 1989. He served as a city councilman in Oskaloosa from 2000 to 2006 and as a member of the Iowa House of Representatives from 2007 to 2010. Palmer has a substantial history of civic involvement including service on the Legal Services Board, pro bono legal service through the Volunteer Lawyer Project, and leadership in community organizations such as Kiwanis, Hospice, Red Cross, Homemaker Health Aid Board, a college alumni board, county sesquicentennial commission, and Jaycees.

In late 2009, Palmer was hired by Linette and Steve Paulos to establish a conservatorship for their minor child. The Pauloses resided in Wapello County and desired the appointment of a conservator for the purpose of settling a personal injury claim for the child. Mrs. Paulos had taken Paxil while the child was in utero, and the child was born with unspecified birth defects.

Palmer directed his secretary to sign the name of Mrs. Paulos on three documents required to establish the conservatorship and approve a settlement of the ward's personal injury claim: a petition for the

appointment of a conservator for the minor child, an application to settle the ward's injury claim, and an application to seal the record of the settlement. Palmer notarized the signatures on the documents and filed them with the clerk of the district court. A district court judge entered orders appointing a guardian ad litem for the child, appointing the child's parents as conservators, and scheduling a hearing on the applications to settle the claim and seal the record of settlement. Another district court judge subsequently entered an order authorizing the conservators to settle the ward's tort claim.

Palmer subsequently filed a motion to withdraw as counsel for the conservators in 2011 asserting he had been unable to prepare an annual report in the conservatorship because the conservators had failed to pay for his services and had refused to respond to his attempts to communicate with them. When the Pauloses appeared for the hearing on Palmer's motion to withdraw, Mrs. Paulos denied the authenticity of some of the signatures in the conservatorship proceedings but admitted the authenticity of others. The presiding district court judge notified the Board of the apparent forgeries.

The Board filed a complaint alleging Palmer violated certain disciplinary rules. In his response to the Board's inquiry, Palmer admitted the signatures of Linette Paulos on the petition for appointment of a conservator and the application to settle the personal injury claim were affixed by his secretary. Palmer claimed, however, in his response that the signatures were affixed with the express permission of Mrs. Paulos because "[t]ime was of the essence" to assure the settlement of the injury claim.

Linette Paulos testified at the hearing before the grievance commission. She affirmed that Palmer had aided her in establishing the

conservatorship and facilitating the settlement of the ward's personal injury claim, and she testified she did not remember giving Palmer authority to have his secretary sign the documents on her behalf. Mrs. Paulos noted, however, that although she does not remember giving such authorization, her memory is compromised as a consequence of a traumatic brain injury for which she took Paxil during the pregnancy. She also candidly acknowledged it was possible that she gave Palmer authority to affix her signature to the documents but simply cannot recall doing so.

To be sure, the signatures on the documents were not those of Mrs. Paulos. Palmer testified that Mrs. Paulos had authorized him to place her signature on the documents and explained his request for such authority in these matters was influenced by the urgency of obtaining prompt court approval of the tort settlement, the Pauloses' unreliable transportation making their travel from their Ottumwa home to his office in Oskaloosa difficult during inclement winter weather, and the time demands of his service in the legislature. Palmer was paid no fee for his work on behalf of the Pauloses. The commission did not make a finding as to whether Palmer had been authorized by Mrs. Paulos to sign her name on the documents. In any case, Palmer did not reveal to the court that the purported signatures of Mrs. Paulos on three documents filed with the court were not actually her signatures. Furthermore, there is no dispute that Palmer notarized the signature of Mrs. Paulos notwithstanding the fact that she did not sign the document in his presence.

## II. The Board's Complaint.

The Board's complaint alleged Palmer violated two provisions of the Iowa Rules of Professional Conduct: rule 32:3.3(a)(1) (prohibiting false

statements of fact or law and requiring attorneys to correct false statements of material fact or law previously made to the tribunal) and rule 32:8.4(d) (defining professional misconduct as including conduct prejudicial to the administration of justice). Following a hearing, the commission found Palmer violated both rules by filing the three documents and failing to reveal to the court that they were not actually signed by Mrs. Paulos. The commission recommended Palmer be suspended for thirty days.

### III. Scope of Review.

Our review of the commission's report under Iowa Court Rule 35.11 is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 205–06 (Iowa 2012). We give the commission's findings weight, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson,* 732 N.W.2d 865, 867 (Iowa 2007).

### IV. Violations.

We find the Board failed to prove Palmer caused the signature of Mrs. Paulos to be affixed to the documents without her express authority. Palmer's testimony that he was given such authority was not convincingly challenged by Mrs. Paulos who conceded her memory deficit may have obscured her recollection of the transaction. Yet, we find the Board proved by a convincing preponderance of the evidence that Palmer violated rule 32:3.3(a)(1) by filing the documents and failing to reveal to the court that the signatures of Mrs. Paulos were affixed by a third person and by misrepresenting through the acts of notarization that Mrs. Paulos had appeared before him in person to sign the documents. In each of these instances, Palmer fell short of the standard of candor to a tribunal required by the rule.

We have on many occasions found rule violations and imposed sanctions for misconduct involving false notarizations. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 454 (Iowa 1995) ("To notarize any signature not affixed in the notary's presence is, alone, a serious violation of ethics."); *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 454 (Iowa 1990) ("We think [false notarization] can never be excused. It is manifestly unprofessional for a lawyer, acting as a notary public, to certify that persons who did not do so personally appeared and attested to a document."); *Comm. on Prof'l Ethics & Conduct v. Seff*, 457 N.W.2d 924, 927 (Iowa 1990); *Comm. on Prof'l Ethics & Conduct v. West*, 387 N.W.2d 338, 341 (Iowa 1986).

We also find the Board proved by a convincing preponderance of the evidence that Palmer's conduct was prejudicial to the administration of justice and therefore in violation of rule 32:8.4(d). "[A]cts which violate well-understood norms and conventions of the practice of law and hamper the efficient and proper operation of the courts will generally constitute a violation of this rule." *Liles*, 808 N.W.2d at 206. We conclude Palmer's false notarization and his failure to disclose to the court that the signatures of Mrs. Paulos were not authentic were clear violations of conventions of the practice of law. *See* Iowa Code § 558.40 (2011) (providing knowing misstatement of material fact in notarization punishable as a serious misdemeanor). Furthermore, his acts hampered the efficient operation of the court by occupying its attention and resources in considering whether the purported signatures of Mrs. Paulos were authentic and whether Palmer's notarization of the documents was improperly performed. *See Liles*, 808 N.W.2d at 206 (concluding attorney's filing of invalid will for probate hampered efficient operation of the court in violation of rule 32:8.4(d)).

**V. Discipline.**

When determining the appropriate discipline for violations of the rules of professional conduct, we explore " 'the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the [attorney's] fitness to continue in the practice of law.' " *Id.* (quoting *Comm. on Prof'l Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985)). We attempt to tailor the discipline to the specific facts and circumstances of each case, considering any aggravating and mitigating circumstances. *Id.* at 206–07.

In choosing the appropriate sanction in cases involving false notarizations by attorneys, we have often imposed lengthy suspensions. *See Clauss*, 530 N.W.2d at 454–55; *Bauerle*, 460 N.W.2d at 454; *Seff*, 457 N.W.2d at 927; *West*, 387 N.W.2d at 342. Yet, these cases have typically involved serious sanctionable violations in addition to acts of false notarization. *Clauss*, 530 N.W.2d at 454 (lying under oath, failing to report settlement agreements, and withdrawing disputed trust funds); *Bauerle*, 460 N.W.2d at 453 (preparing backdated documents in furtherance of client's attempted tax evasion); *Seff*, 457 N.W.2d at 926 (forging father's signature on a will, preparing false petition for probate of will, procuring false witness attestation for the will, and filing the probate documents with the court); *West*, 387 N.W.2d at 340 (falsely representing ownership of property, forging signatures of brother and brother's spouse on deed and directing secretary to falsely notarize the signatures, forging brother's signature on corporate resolution, and lying to opposing counsel).

As we have already noted, Palmer's violations were not limited to acts of false notarization, but they are notably less extensive than those

at issue in *Clauss*, *Bauerle*, *Seff*, and *West* and deserve a correspondingly less severe sanction than the ones imposed in those cases. Notwithstanding the significant mitigating facts noted above, we believe Palmer's prior history of discipline requires more than a public reprimand.[1] Upon our de novo review of the record and our consideration of the relevant factors affecting our determination of the sanction, we conclude the commission's recommendation of a suspension of thirty days is appropriate in this case.

## VI. Conclusion.

We suspend Palmer's license to practice law in Iowa for thirty days. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.13(3). Palmer shall comply with the notification requirements as provided in rule 35.23. The costs of these proceedings are taxed to Palmer pursuant to rule 35.27(1). Absent an objection by the Board, we shall reinstate Palmer's license to practice law on the day after the suspension period expires. *See* Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**

---

[1]Palmer has previously received two public reprimands and one private admonition.