# IN THE SUPREME COURT OF IOWA

No. 23–0160

Submitted September 13, 2023—Filed October 20, 2023

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MIKE MULAMBA MBANZA,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a thirty-day suspension of the respondent's license to practice law and additional continuing legal education requirements based on violations of our attorney ethics rules. **LICENSE SUSPENDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Allison Schmidt, Des Moines, for complainant.

Mike Mbanza, Coralville, pro se.

**McDERMOTT, Justice.**

This attorney disciplinary appeal presents the case of a lawyer whose misconduct while defending himself against ethics charges eclipsed the gravity of the underlying charges from which his case arose. The case started with a charge about a false certification by the lawyer on a client's federal immigration application. It ends, regrettably, as a cautionary tale for lawyers about the bounds of proper advocacy when defending against ethics charges. Although lawyers are entitled to put on a zealous defense in ethics cases, they aren't allowed to stonewall when responding to discovery requests, file frivolous motions, or engage in similar obstructive conduct in a grievance commission proceeding.

The Iowa Supreme Court Attorney Disciplinary Board charged the lawyer with violating multiple Iowa ethics rules and a federal regulation governing practice in immigration matters. The grievance commission concluded that the lawyer committed several of the charged violations and also found significant aggravating conduct. It recommended that we suspend the lawyer's license for thirty days and require additional continuing legal education. In our de novo review, we find that the lawyer violated the federal regulation and impose a thirty-day suspension.

## I. Background Facts and Proceedings.

Mike Mbanza was admitted to practice law in Iowa in April 2019. A little more than a year before receiving his law license, the United States Department of Justice's Office of Legal Access Programs approved Mbanza to work as a fully-accredited representative in federal immigration matters. Mbanza maintains a solo law practice in Coralville and also serves as the executive director and provides legal services to a nonprofit organization that he founded

in 2013 called "Path of Hope." Path of Hope's mission centers on assisting immigrants and refugees in legal and resettlement matters.

In May 2018, Mbanza began representing a client—whom we'll call "Randall"—on federal immigration matters. ("Randall" is not the client's real name, but because he had a criminal charge expunged after a deferred judgment, as discussed below, we use a pseudonym here.) In mid-2019, Randall was arrested for domestic abuse assault against his wife. Mbanza defended Randall in the criminal case that ensued. Randall ultimately pleaded guilty to the charge and received a deferred judgment. Around this same time, Mbanza also represented Randall in a marital dissolution case and a civil protective order proceeding related to the domestic abuse assault. The court entered a divorce decree in January 2020.

Randall's immigration matters continued on. In late March 2020, Path of Hope submitted to the United States Citizenship and Immigration Services a document titled, "Application to Register Permanent Resident or Adjust Status," Form I-485, on Randall's behalf. The I-485 application, which bore the date March 30, 2020, contained several misrepresentations. In a section that sought information about Randall's marital status, the application reported that Randall was still married to the woman that he'd divorced two months earlier. In response to five separate questions about Randall's criminal history, the application failed to disclose his commission of the domestic abuse assault, arrest, criminal charges, guilty plea, and deferred judgment. The application similarly failed to provide information responding to a series of inquiries seeking additional details about the criminal history disclosures, including "why you were arrested . . . or charged; where you were arrested . . . or charged; when (date) the event occurred; and the outcome of disposition."

Randall's I-485 application contained a "preparer's certification." It stated:

> By my signature, I certify, under penalty of perjury, that I prepared this application at the request of the applicant. The applicant then reviewed this completed application and informed me that he or she understands all of the information contained in, and submitted with, his or her application, including the Applicant's Certification, and that all of this information is complete, true, and correct. I completed this application based only on information that the applicant provided to me or authorized me to obtain or use.

(Emphasis omitted.) Mbanza signed the preparer's certification even though, as we discuss in more detail below, he had not prepared or reviewed the document.

The Iowa Attorney Disciplinary Board later became aware of the misrepresentations in Randall's I-485 application. The Board proposed a public reprimand to resolve the ethics violations associated with Mbanza's false preparer's certification. In a response letter to the Board objecting to the proposed public reprimand dated August 31, 2020, Mbanza claimed that the application was prepared by a Path of Hope nonlawyer staff member named Naara. Mbanza wrote that she "filled out the form based on the information she received directly from [Randall]." The letter continues: "She received clear instruction from me, according to the agency's internal practice and procedures, to contact [Randall] and obtain his biographical and background data to prepare [his] Application for Permanent Residency and mail it to DHS. Naara did exactly that." Mbanza writes that the reason Randall would have provided her with incorrect answers "is still unknown, and Naara did not bring these issues to me because she had no reason to doubt [Randall's] statements." Mbanza reiterated that "Naara prepared the Application relying on the information received from [Randall] and mailed it to DHS as instructed." As to what happened next, Mbanza writes: "Upon the discovery of this error, however, DHS was contacted under my

instructions and corrections were made to [the] Application for Permanent Residency to reflect his current criminal background."

The Board filed a complaint against Mbanza with the Iowa Supreme Court Grievance Commission. The charges relating to Mbanza's submission of the application alleged multiple violations of Iowa's ethics rules and a violation of a federal regulation governing practitioners in immigration matters. Mbanza denied every paragraph of the complaint in his answer. The Board later amended the complaint to add a charge unrelated to the application, but the grievance commission found that the Board failed to prove this claim, and the Board doesn't pursue it on appeal.

The rules of the grievance commission entitle both the responding lawyer and the Board to conduct discovery as provided in the Iowa Rules of Civil Procedure. *See* Iowa Ct. R. 36.13. But the rules do not require a lawyer charged with an ethics violation to answer an interrogatory, request for admission, or deposition question if the answer would be self-incriminating. *Id.* Even so, the lawyer still must "respond to the committee's request even if it is only to announce that he is exercising his fifth amendment rights." *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Horn*, 379 N.W.2d 6, 9 (Iowa 1985).

The grievance commission proceeding included an extraordinary number of discovery disputes, almost all of which centered on Mbanza's refusal to provide meaningful answers to the Board's discovery requests. In response to each of the Board's initial set of document requests and interrogatories, Mbanza offered only this response: "This information is reserved for impeachment purposes only and not subject to disclosure under Rule 1.500 of the Iowa Rules of Civil Procedures." After unsuccessful attempts to get Mbanza to provide a substantive response, the Board filed a motion to compel discovery and extend the discovery deadline.

The grievance commission's division president granted the Board's motion and ordered Mbanza to serve substantive responses within ten days.

When Mbanza failed to adequately respond, the Board sought sanctions against him. The division president agreed that Mbanza's responses remained deficient, and he again gave Mbanza time to amend his responses. When Mbanza continued to provide inadequate responses, the division president granted the Board's requested sanction: prohibiting Mbanza from offering any documents or eliciting testimony responsive to the Board's discovery requests that hadn't been provided in his responses.

The Board followed up with a second motion to compel after Mbanza failed to adequately respond to requests for admission. Most of the requests for admission dealt simply with the authenticity of documents in the case. The commission's division president determined that Mbanza's answers to the requests and responses to related interrogatories denying any requests were deficient, and he gave Mbanza time to supplement his responses. The division president later determined that Mbanza's revised answers were still evasive or incomplete and thus that he'd failed to comply with the order. As a sanction, the division president, citing Iowa Rule of Civil Procedure 1.517(1)(*c*), deemed admitted fourteen of the Board's fifteen requests for admission. The Board also moved to have Mbanza's denials in his amended answer (which it also argued were deficient) deemed admitted, but the division president denied this motion.

Mbanza engaged in considerable motion practice of his own, much of it frivolous. Shortly after the Board filed its complaint with the grievance commission, Mbanza sent an email to the two lawyers handling the case on behalf of the Board. In his email, Mbanza threatened to file claims against each of them, informing them that if the Board didn't dismiss the complaint, they "should expect claims of malicious prosecution and intentional infliction of

emotional distress naming you personally and professionally as a Defendant." Five days before the hearing, Mbanza filed with the grievance commission what he labeled a "counterclaim" against the two Board lawyers alleging these causes of action. The grievance commission's rules provide no mechanism for an attorney to pursue a counterclaim against the Board, its agents, or anyone else, and the motion was promptly denied. Mbanza additionally filed a motion to shorten the deadline to respond to his counterclaim, a motion for directed verdict (before the hearing had even started), a motion to disqualify the Board's attorneys, a motion for summary judgment, and a motion to dismiss. All were denied.

The hearing before the grievance commission spanned two days. Mbanza represented himself at the hearing. Two witnesses testified: Naara and Mbanza. Mbanza's testimony about the events surrounding the application differed in important ways from what he'd stated in his objection letter to the Board a year earlier. Mbanza testified that the I-485 application dated March 30 was merely a draft that had never been submitted to the agency. Instead, according to Mbanza, a final version with corrected information had been prepared and submitted after Mbanza met with Randall in May 2020.

Mbanza's hearing testimony contradicted the statements in his letter claiming that his office had submitted the application in March 2020 and thereafter contacted the agency to correct it. The information in Mbanza's objection letter generally is supported by Naara's testimony on this point.

What's more, Mbanza's testimony also contradicted other evidence offered at the hearing, including a notation on an internal work report for Randall's case showing the following activity for March 30: "Naara [c]ompleted forms I-485, I-131, and G-28. Prepared packets and processed them. They were mailed out." Additionally, if the application dated March 30 really had been merely a draft, it

makes little sense for Mbanza to have personally signed the draft as he did in three different places.

Mbanza, for his part, did not introduce into evidence a corrected, final version of the application that he claims to have filed in May 2020. Mbanza offered a certified mail receipt of a mailing to Randall noting "I-485" and dated May 13. He also points to a notice from the Department of Homeland Security with a stamp showing receipt of an application on May 26. But Mbanza had not previously suggested in any case filings, discovery responses, or other communications with the Board that the application dated March 30 was a draft and had never been submitted to the agency. In the commission's findings of fact after the hearing, the commission wrote that "[t]hroughout the hearing, Mbanza's testimony was evasive or contradictory on several points," including this critical one.

The grievance commission ultimately concluded that the Board had proved several of the charged violations. It recommended that we impose a thirty-day suspension of Mbanza's license and require him to attend six additional hours of continuing legal education on ethics and civil procedure.

**II. Ethical Violations.**

In an attorney disciplinary case, we review de novo the alleged violations and evidence to ensure that the Board has proved each allegation of misconduct by a convincing preponderance of the evidence. Iowa Ct. R. 36.22(4); *see Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281–82 (Iowa 2009) (per curiam).

**A. False Statement on the I-485 Application.** The grievance commission determined that by signing the preparer's certification and submitting the I-485 application dated March 30 that contained material misrepresentations, Mbanza

violated both a federal regulation governing immigration practice and Iowa's attorney ethics rules.

We start by addressing a choice of law issue. As an Iowa licensee, Mbanza is subject to the disciplinary authority of our court. *See* Iowa R. of Prof'l Conduct 32:8.5(a) ("A lawyer admitted to practice in Iowa is subject to the disciplinary authority of Iowa, regardless of where the lawyer's conduct occurs."). Mbanza is also subject to federal regulation because he filed an appearance in Randall's immigration case with the Department of Homeland Security, and on his appearance form, he acknowledged having read and understood "the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS." One of those conditions is that his appearance subjects him to regulation under (among other regulations) section 1003.102 of the Code of Federal Regulations. *See* 8 C.F.R. § 1003.102.

The grievance commission noted that Mbanza did not challenge the Board's attempt to prosecute him under both Iowa Rule of Professional Conduct 32:3.3 and 8 C.F.R. § 1003.102(c). It thus applied and found violations of both. But in situations where a lawyer could find himself subject to conflicting sets of ethics rules, we generally apply the choice of law provisions in our ethics rules. *See* Iowa R. of Prof'l Conduct 32:8.5(b).

For instance, in *Iowa Supreme Court Attorney Disciplinary Board v. Akpan*, we addressed a choice of law issue involving ethical violations by an Iowa licensee practicing in federal court in Texas. 951 N.W.2d 440, 449 (Iowa 2020). We noted that Iowa's ethics rules subjected the lawyer both to Iowa's disciplinary authority and the disciplinary rules of Texas. *Id.* (citing Iowa R. of Prof'l Conduct 32:8.5(b)(2)). In *Akpan*, the lawyer's actions all occurred while practicing in Texas, so we applied Texas's interpretation of its own ethics rules in evaluating the lawyer's conduct. *Id.* at 449–54.

In this case, Mbanza's conduct involving the submission of the I-485 application occurred while practicing before the Customs and Immigration Service. We thus will apply the rules of that jurisdiction—specifically, 8 C.F.R. § 1003.102(c)—and will not take up the claim that Mbanza's certification also violated the similarly worded Iowa Rule of Professional Conduct 32:3.3. *See* Iowa R. of Prof'l Conduct 32:8.5(b)(2).

The Code of Federal Regulations provides for disciplinary sanctions against a practitioner who

> [k]nowingly or with reckless disregard makes a false statement of material fact or law, or willfully misleads, misinforms, threatens, or deceives any person (including . . . an officer or employee of the Department of Justice), concerning any material and relevant matter relating to a case, including knowingly or with reckless disregard offering false evidence.

8 C.F.R. § 1003.102(c). The Board argues that Mbanza violated this regulation by certifying that he had prepared and reviewed the application with Randall when Mbanza knew that he had not. It is true, as Mbanza points out, that the preparer's certification doesn't include an attestation about the accuracy of the information on the form. But the preparer's certification, by its own terms, is the *preparer*'s avowal to have recorded the applicant's information—and to have reviewed and confirmed its accuracy with the applicant—to ensure that all the "information is complete, true, and correct." The duty imposed on the preparer in making this declaration is significant: "under penalty of perjury."

Mbanza argues that we can't discipline him for a violation of section 1003.102(c) because the governing authority in the jurisdiction in which the misconduct occurred—the Citizenship and Immigration Services—hasn't pursued him for any misconduct. But our ethics rules make clear that "[a] lawyer admitted to practice in Iowa is subject to the disciplinary authority of Iowa, regardless of where the lawyer's conduct occurs," and the "lawyer may be subject

to the disciplinary authority of both Iowa and another jurisdiction for the same conduct." Iowa R. of Prof'l Conduct 32:8.5(a). Whether another body with jurisdiction over an Iowa lawyer has separately prosecuted a violation doesn't dictate our court's independent authority to do so.

We could not find, and the parties do not cite, any federal immigration cases addressing a violation of section 1003.102(c) based on a misrepresentation in a preparer's certification. But applying the plain language of the regulation to the facts in this case, we conclude that Mbanza made a false statement of material fact by certifying and submitting the application on March 30 in violation of the federal regulation.

Although the Board also pursued violations under Iowa Rule of Professional Conduct 32:8.4(c) for "conduct involving dishonesty, fraud, deceit, or misrepresentation," the grievance commission concluded that Mbanza's misconduct fit more appropriately under the rules already discussed. The Board doesn't challenge that conclusion or otherwise argue for a violation under rule 32:8.4(c) on appeal, so we will not address it.

**B. Supervision of Nonlawyer Staff.** Rule 32:5.3 requires "a lawyer [with] direct supervisory authority over [a] nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Iowa R. of Prof'l Conduct 32:5.3(b). A supervising lawyer is responsible for the nonlawyer's conduct if the conduct would be a violation of the ethics rules "if engaged in by a lawyer" and if "the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or . . . knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." *Id.* r. 32:5.3(c)(1)–(2). We have found a violation of this rule when a lawyer could have prevented the supervised

nonlawyer's misconduct through reasonable efforts but failed to do so. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 481–82 (Iowa 2014).

The Board argues that Mbanza violated this rule by failing to instruct nonlawyer Naara about the types of information needed to complete an I-485 application. The Board focuses on an intraoffice information form that Mbanza had Naara use to gather biographical data from Randall. The form failed to ask about Randall's marital status or criminal history. This failure, the Board argues, lies at the root of the misrepresentations on the I-485 application that Mbanza's office submitted on March 30. The grievance commission concluded that Mbanza's supervision of Naara violated rule 32:5.3(c).

But the focus on Naara's work on the application points the spotlight in the wrong place. Naara testified that after she gathered the information from the client and inserted it into the I-485 application, she understood that Mbanza would review and verify the information with the client. Mbanza testified to the same thing. In fact, such a process isn't inconsistent with the preparer's certification on the I-485 application discussed above. The person signing as *preparer*—in this case, Mbanza—must certify under penalty of perjury that he has reviewed the completed application and verified the information in it with the client. Considering the preliminary role that Naara played in what was supposed to be a multistep process, we do not find that she engaged in any conduct "that would be a violation of the Iowa Rules of Professional Conduct if engaged in by a lawyer." Iowa R. of Prof'l Conduct 32:5.3(c).

The procedure that Mbanza put in place dividing duties between himself and Naara is ethically unproblematic. Paralegals and other nonlawyer staff routinely assist in gathering and assimilating information for legal filings. The misconduct in this case stems not from Naara's work on the *unsubmitted* application, but from Mbanza's failure to fulfill his verification duties as the

certifying preparer. We thus find no violation based on Mbanza's supervision of nonlawyer staff under rule 32:5.3.

### III. Sanction.

"The purposes of lawyer discipline include protection of the public, the need for deterring other lawyers from similar misconduct, upholding the integrity of the legal system, and assuring the fair administration of justice." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 516 (Iowa 2020); *see also* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* § 1.1, at 1 (2015) [hereinafter Am. Bar. Ass'n]. We have no standard sanction for particular types of misconduct. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). To determine the appropriate sanction, we consider the nature of the ethical duties that the lawyer violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating circumstances. *Beauvais*, 948 N.W.2d at 516; *see also* Am. Bar Ass'n § 3.0, at 113.

We give respectful consideration to the commission's findings and recommendations but may impose a greater or lesser sanction than what the commission recommends. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016). The commission recommends a thirty-day suspension of Mbanza's license to practice law and completion of six additional continuing legal education credits (CLE) beyond the regular fifteen-hour annual requirement, with three hours devoted to ethics and three hours devoted to civil procedure. The Board requests that we adopt the commission's recommendation as to both the suspension and CLE requirements. Mbanza asks that we dismiss the complaint in its entirety or, in the event we find a violation, that we issue a private admonition.

Although we haven't had occasion to consider a sanction for lawyer misconduct under 8 C.F.R. § 1003.102(c), we have imposed discipline for violations under the aforementioned rule 32:3.3, which contains almost identical language forbidding knowingly making a false statement of fact or law to a tribunal. *Compare* 8 C.F.R. § 1003.102(c), *with* Iowa R. of Prof'l Conduct 32:3.3. For instance, in *Iowa Supreme Court Attorney Disciplinary Board v. Kallsen*, we imposed a one-year suspension when a lawyer violated rule 32:3.3 by forging the signature on a written guilty plea of a defendant the lawyer was representing. 814 N.W.2d 233, 238–40 (Iowa 2012). But the lawyer in that case had a history of prior discipline and, as we remarked, the underlying forgery at issue involved a "grave and serious breach of professional ethics." *Id.* at 239 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007)).

In *Iowa Supreme Court Attorney Disciplinary Board v. Casey*, we imposed a three-month suspension when a lawyer filed a document with the court misrepresenting the marital status of a decedent in a probate case. 761 N.W.2d 53, 61 (Iowa 2009) (per curiam). But the misconduct in that case went beyond this misrepresentation and included neglect of cases, the premature taking of probate fees, and a failure to promptly respond to the Board's investigation. *Id.* at 62.

In *Iowa Supreme Court Attorney Disciplinary Board v. Haskovec*, we addressed a lawyer's misconduct involving a witness's signature on a will. 869 N.W.2d 554, 562 (Iowa 2015). For a will to be valid, two witnesses must sign it in the presence of the testator and each other. *Id.* at 561 (citing Iowa Code § 633.279(1) (2011)). The lawyer had one of the witnesses sign the will outside the presence of the testator and the other witness, and then gave the will to the

executor to probate it without disclosing the problem. *Id.* We imposed a public reprimand. *Id.* at 563.

In *Iowa Supreme Court Attorney Disciplinary Board v. Yang,* a lawyer and his client failed to attend an immigration court hearing, resulting in the dismissal of the client's case. 821 N.W.2d 425, 428–29 (Iowa 2012). The lawyer then misrepresented in an appeal filing that he had personally received notice from the immigration court about the hearing—which might have permitted the attorney to appear by telephone and excused the failure to appear in person— when in fact the lawyer had not received the hearing notice. *Id.* The lawyer failed to advise the client that he could file a motion alleging the lawyer's ineffective assistance of counsel as a ground to reopen the proceeding. *Id.* at 430. In this case, too, we imposed a public reprimand. *Id.* at 431.

The case perhaps most analogous to this one is *Iowa Supreme Court Attorney Disciplinary Board v. Palmer*, 825 N.W.2d 322 (Iowa 2013). In *Palmer*, we imposed a thirty-day suspension when a lawyer violated rule 32:3.3 by filing falsely notarized documents with the court and thus "misrepresenting through the acts of notarization that [the client] had appeared before him in person to sign the documents." *Id.* at 324–25. But in that case, we also found that the lawyer's conduct was prejudicial to the administration of justice because it required the court to expend attention and resources to determine the authenticity of the client's purported signatures and the legitimacy of the notarization. *Id.* at 325. "[A]cts which violate well-understood norms and conventions of the practice of law and hamper the efficient and proper operation of the courts," we declared, "will generally constitute a violation." *Id.* (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles,* 808 N.W.2d 203, 206 (Iowa 2012)).

We turn to mitigating and aggravating factors. Mbanza's lack of prior discipline is mitigating, although this factor doesn't carry much weight since Mbanza was only in his first year of practice when the underlying misconduct occurred. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sears*, 933 N.W.2d 214, 225 (Iowa 2019). Mbanza's inexperience in the practice of law is mitigating. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155 (Iowa 2018). That Mbanza focuses his practice on an underserved community is likewise a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 953 N.W.2d 126, 155 (Iowa 2021). Mbanza's wife was diagnosed with cancer while this disciplinary matter proceeded, and the personal stress that her health problems created can be mitigating to the extent it adversely influenced his behavior or actions during the disciplinary case (although, based on the timing, it would have had no impact on his underlying misrepresentation on the application). *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012). Mbanza's effort to correct the false information about Randall's criminal history and marital status after submitting the I-485 application, as described in his letter to the Board, is also mitigating. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012).

The aggravating factors in this case are considerable. As an initial matter, Mbanza's misrepresentation in the preparer's certification involves dishonesty, which even inexperienced lawyers must recognize is wrong. *Beauvais*, 948 N.W.2d at 518. Further, that Mbanza needed to contact the Citizenship and Immigration Services to correct the false information on Randall's original I-485 application at minimum alerted the immigration authorities to problematic facts in Randall's application. While we have no evidence of actual harm to the client, having to highlight Randall's criminal conduct as described in Mbanza's letter

poses risks that work to the client's disadvantage. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 418 (Iowa 2023).

Mbanza's extraordinary actions throughout the grievance commission process are a severely aggravating factor. Mbanza refused to substantively answer virtually every request for discovery that the Board made to him, leaving the grievance commission little choice but to impose harsh sanctions for his repeated refusals to provide answers. Mbanza argues on appeal that the division president erred in imposing discovery sanctions against him, but we find nothing erroneous about the ruling. "The attorney may not 'stonewall' the disciplinary authorities, and, indeed, simple disregard for requests for information may result in non-responses being treated as admissions." 16 Gregory C. Sisk et al., *Iowa Practice Series Lawyer and Judicial Ethics* § 12:1(c), at 1045–46 (2023 ed. 2023). The decision to impose sanctions finds ample support in this record.

Resisting discovery wasn't Mbanza's only impropriety during the grievance commission proceeding. As mentioned, Mbanza made an assortment of frivolous filings. Employing a strategy seemingly founded on the belief that the best defense is a no-holds-barred offense, Mbanza threatened to file malicious prosecution and intentional infliction of emotional distress claims if the Board didn't dismiss the charges and ultimately followed through. The grievance commission's rules provide no mechanism for an attorney to pursue a counterclaim against other lawyers in the proceeding. Mbanza also filed a series of other motions that lacked merit, including a motion for directed verdict before the hearing had started or evidence had been presented—typically necessary precursors to such a motion. All were denied; indeed, most do not even apply in grievance commission proceedings. The Board and the commission nonetheless had to expend time and resources responding to them.

Mbanza's actions during the grievance commission proceeding almost certainly constitute conduct "prejudicial to the administration of justice" under rule 32:8.4(d). Iowa R. of Prof'l Conduct 32:8.4(d). While there is no "typical" conduct that prejudices the administration of justice, it includes conduct that "hamper[s] 'the efficient and proper operation of the courts,' " including conduct that results in unnecessary proceedings or delays. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 666 (Iowa 2017) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)).

Mbanza's failure to respond to discovery in this case caused the Board to file multiple motions to compel and required the commission to hold hearings on the motions and sanctions. In *Iowa Supreme Court Attorney Disciplinary Board v. Beauvais*, we held that a lawyer's failure to respond to discovery requests that then required the defendants to file two motions to compel and a motion for sanctions—and for the court to hold hearings on those motions—violated rule 32:8.4(d). 948 N.W.2d at 515–16. Mbanza's conduct throughout the commission process certainly serves as an aggravating factor in determining the appropriate discipline.

The grievance commission also concluded that Mbanza's testimony at the hearing was not credible—or, as the commission put it, "evasive, contradictory, and false." In our de novo review of the record, we come to the same conclusion. Deceptive testimony by a lawyer is an obvious aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 424 (Iowa 2016). The most troubling area of Mbanza's testimony concerned details of the application's submission and the incongruity of his hearing testimony when compared to his letter provided to the Board more than a year before. That this testimony came after Mbanza repeatedly refused to provide information in discovery adds to its aggravating nature.

We determine the appropriate sanction in an attorney disciplinary matter based on the unique circumstances of the case before us and aim for consistency with our prior cases. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 464 (Iowa 2014). This is an unusual case in which the underlying misconduct—the misrepresentation associated with the preparer's certification on the I-415 application—on its own likely would not warrant a suspension. *See, e.g., Haskovec*, 869 N.W.2d at 562–63; *Yang*, 821 N.W.2d at 430–31. And indeed, a public reprimand is the sanction the Board originally proposed. Yet more egregious conduct presents itself in Mbanza's actions during the grievance commission proceeding that pushes this case into suspension territory. Although a lawyer has the right to defend himself zealously against ethics charges in a grievance commission proceeding, Mbanza's conduct in this case, unfortunately, far exceeded that right.

We thus find a suspension of thirty days to be the appropriate sanction in this case. We do not impose any additional CLE requirements.

## IV. Disposition.

We suspend Mike Mbanza's license to practice law with no possibility for reinstatement for thirty days. The suspension will begin ten days from the date of this decision. Iowa Ct. R. 34.23(1). Mbanza's suspension applies to all facets of the practice of law under Iowa Court Rule 34.23(3). He must comply with the notification requirements to his clients in Iowa Court Rule 34.24. We tax the costs of this action to Mbanza under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**